# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00323-CR

**Ex parte Aftab Ali**

## FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
## NO. 08-04653-1, HONORABLE SUZANNE BROOKS, JUDGE PRESIDING

## O P I N I O N

Appellant Aftab Ali pleaded guilty to the offense of delivery of drug paraphernalia. *See* Tex. Health & Safety Code Ann. § 481.125(b) (West 2010). Punishment was assessed at 180 days in county jail and a fine of $4,000. The trial court suspended imposition of the sentence and placed Ali on community supervision for 12 months. Subsequently, Ali filed an application for writ of habeas corpus, alleging that his trial counsel was ineffective in failing to warn him of the immigration consequences of his guilty plea. The trial court denied the application. In a single issue on appeal, Ali asserts that he is entitled to habeas relief. We will affirm the trial court's order.

## BACKGROUND

According to the arrest affidavit in the record, on or about March 28, 2008, an undercover officer entered a convenience store in Taylor and asked Ali, the counter clerk, for a "brown bag special." According to the officer, Ali asked him "if that was curved or straight, meaning the design of the pipe," and then placed the following items in a small brown bag: (1) a glass pen; (2) small pieces of brillo pad (which, the officer added, were "formed to fit the

glass pipe"); and (3) a lighter.  The glass pen and brillo pad, the officer claimed, had been hidden behind the counter.  The officer further averred that Ali then handed him the bag in exchange for an unspecified amount of money.  The officer concluded:

> Your affiant believes the defendant knew the material was drug paraphernalia as evident [sic] by knowing the term "brown bag special" as well as concealing the cheaply made glass pen behind the counter, not a place a legitimate writing utensil would be placed for sale, having the brillo formed to fit the pipe and concealing all the items behind the counter.  The glass pen is easily converted to a smoking pipe.  The defendant also had knowledge brillo material was needed with the glass pipe for inhaling crack cocaine into the body.

Based on the above allegations, Ali was charged with intentionally or knowingly delivering drug paraphernalia to the undercover officer.  On February 9, 2009, Ali appeared in court with his attorney and pleaded guilty to the charged offense.  Prior to entering his plea, Ali had read and signed written admonishments concerning the consequences of his plea.  One such admonishment was the following:  "If Defendant is not a United States citizen, a plea of 'GUILTY' or 'NO CONTEST' to the offense charged may result in deportation, exclusion from admission to this country, or the denial of naturalization under federal law."  At the plea hearing, the trial court asked Ali (1) if he had read and signed the admonitions along with his attorney and (2) if he understood his rights in the case, including his right to a jury trial.  To each question, Ali answered, "Yes, ma'am."  The trial court also asked Ali the following:  "By signing these admonishment forms you are indicating to me you want to waive your rights, you want to enter a plea of guilty to this charge and accept a plea bargain agreement.  Is that how you wish to proceed?"  Ali answered, "Yes, ma'am."  The trial court then accepted Ali's guilty plea, adjudged him guilty, and sentenced him as noted above.

Approximately one year later, after Ali's probationary term had been completed, Ali filed an application for writ of habeas corpus. In the application, Ali alleged that his guilty plea had been involuntary due to the ineffective assistance of counsel. The trial court denied the application, but this Court, concluding that the trial court had not considered the merits of the application as required by article 11.072 of the code of criminal procedure, reversed and remanded the cause for further proceedings. *See Ex parte Ali*, No. 03-10-00207-CR, 2010 Tex. App. LEXIS 10018 (Tex. App.—Austin Dec. 16, 2010, no pet.) (mem. op., not designated for publication). Subsequently, the trial court directed the parties to file additional affidavits and to submit proposed findings of fact and conclusions of law. The evidence considered by the trial court, which we summarize in detail below, included the affidavits of Ali, Ali's trial counsel, and Hasibullah Karim, a person who had been charged with a similar offense and who had been been represented by the same attorney. After considering the evidence, the trial court entered its findings of fact and conclusions of law and denied relief. This appeal followed.[1]

**STANDARD OF REVIEW**

In reviewing the trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Karlson*, 282 S.W.3d 118, 127 (Tex. App.—Fort Worth 2009, pet. ref'd). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or when it acts arbitrarily or

---

[1] Ali's brother, Rizwan Ali, was charged with a similar offense, pleaded guilty, and filed a similar application for writ of habeas corpus, which the trial court also denied. Rizwan Ali's appeal has been docketed separately under cause number 03-11-00342-CR.

unreasonably.  *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

To prevail on a post-conviction writ of habeas corpus, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination" and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996).  In an article 11.072 habeas case, such as the one before us, the trial court is the sole finder of fact.  *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011).  "There is less leeway in an article 11.072 context to disregard the findings of a trial court" than there is in an article 11.07 habeas case, in which the Court of Criminal Appeals is the ultimate fact finder.  *Id*. Thus, the familiar *Guzman* standard of review controls in such cases.  *Id*. (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  Under this standard, the appellate court affords almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor.  *Id*. at 787.  Moreover, "a reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit." *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005) (citing *Manzi v. State*, 88 S.W.3d 240, 242-44 (Tex. Crim. App. 2002)).  "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing *Ex parte Evans*, 964 S.W.2d 643, 648 (Tex. Crim. App. 1998); *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994)).  We afford the same amount of deference to the trial court's application of the law

to the facts, to the extent that the resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007). However, when the facts are uncontested and the trial court's ruling does not turn on the credibility or demeanor of witnesses, a de novo review by the appellate court is appropriate. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *see Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005).

## ANALYSIS

### Jurisdiction

As an initial matter, the State contends that the trial court lacked jurisdiction to consider Ali's habeas application. For a trial court to have jurisdiction to consider a habeas application, among other requirements, the applicant must be subject to "confinement" or "restraint." *See Ex parte Schmidt*, 109 S.W.3d 480, 481-83 (Tex. Crim. App. 2003); *Rodriguez v. Court of Appeals*, 769 S.W.2d 554, 557-58 (Tex. Crim. App. 1989); *see also* Tex. Code Crim. Proc. Ann. arts. 11.01, 11.09 (West 2005). The State asserts that because there is no evidence that Ali is the subject of current deportation proceedings, he has failed to show that he was subject to either "confinement" or "restraint" as a result of his misdemeanor conviction. We disagree.

The terms "confinement" and "restraint," for habeas corpus purposes, have been defined broadly. "Confinement" refers "not only to the actual, corporeal and forcible detention of a person, but likewise to any coercive measures by threats, menaces or the fear of injury, whereby one person exercises a control over the person of another, and detains him within certain limits."

5

Tex. Code Crim. Proc. Ann. art. 11.21 (West 2005). "Restraint" refers to "the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." *Id*. art. 11.22 (West 2005). "The writ of habeas corpus is intended to be applicable to all such cases of confinement and restraint, where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." *Id*. art. 11.23 (West 2005). "Concepts of 'confinement' and 'restraint' encompass incarceration, release on bail or bond, release on probation or parole, or any other restraint on 'personal liberty.'" *Ex parte Davis*, 748 S.W.2d 555, 557 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd).

Moreover, the completion of an applicant's sentence or probationary term does not deprive the trial court of jurisdiction if the applicant remains subject to collateral legal consequences resulting from his conviction or sentence. *See Ex parte Renier*, 734 S.W.2d 349, 353 (Tex. Crim. App. 1987) (op. on reh'g); *Ex parte Crosley*, 548 S.W.2d 409, 410 (Tex. Crim. App. 1977); *Le v. State*, 300 S.W.3d 324, 326-27 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *State v. Collazo*, 264 S.W.3d 121, 126-27 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Collateral legal consequences resulting from a prior misdemeanor conviction have been defined broadly to include a wide variety of detrimental consequences. *See, e.g.*, *Le*, 300 S.W.3d at 326-27 (detention by immigration officials and potential deportation); *Ex parte Wolf*, 296 S.W.3d 160, 166-67 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (termination of employment); *Collazo*, 264 S.W.3d at 126-27 (denial of Texas peace officer's license); *Davis*, 748 S.W.2d at 556-57 (denial of entry into military). Additionally, the collateral legal consequences of a conviction encompass potential consequences that have not yet occurred. *See, e.g.*, *Tatum v. State*, 846 S.W.2d 324, 327

6

(Tex. Crim. App. 1993) ("A judgment of conviction for a misdemeanor offense may have detrimental collateral consequences whether or not probation is completed without a hitch or jail time is actually served. If a misdemeanor judgment is void, and its existence *may* have detrimental collateral consequences in some future proceeding, it may be collaterally attacked, whether or not a term of probation was successfully served out." (emphasis added)); *Ex parte Langston*, 510 S.W.2d 603, 604 (Tex. Crim. App. 1974) (holding that trial court had jurisdiction to consider habeas application despite applicant having completed his sentence because "if the conviction remains on the petitioner's records, he will continue to be subject to the imposition of those collateral legal consequences which conviction of a felony normally entails"); *see also Sibron v. New York*, 392 U.S. 40, 57 (1968) (acknowledging "the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences" and observing that "it is far better to eliminate the source of a potential legal disability than to require the citizen to suffer the possibly unjustified consequences of the disability itself for an indefinite period of time before he can secure adjudication of the State's right to impose it on the basis of some past action"); *Fiswick v. United States*, 329 U.S. 211, 221-23 (1946) (concluding that Court had jurisdiction to review lawfulness of conviction despite fact that sentence had already been served because of *potential* immigration consequences of conviction, including being subject to deportation and possible difficulty in establishing good character for naturalization purposes).

In Ali's habeas application, he alleges that as a result of his conviction, he is "unable to obtain United States citizenship or Permanent Resident Alien status and is currently subject to removal proceedings by the Attorney General through ICE [Immigration and Customs Enforcement]." These allegations, which include the present consequence of Ali being unable to

7

obtain U.S. citizenship, as well as Ali being "currently subject" to deportation proceedings, are undisputed by the State. Also undisputed are statements in Ali's affidavit that he has learned that he faces "possible removal from this country" and that, as a result of his plea, he is subject to "potential detention by the immigration authorities and automatic deportation from the United States." On this record, in accordance with the statutory provisions and precedent discussed above, we conclude that the trial court had jurisdiction to consider Ali's habeas application. *See Le*, 300 S.W.3d at 326; *see also* Tex. Code Crim. Proc. Ann. art. 11.04 (West 2005) ("Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it."); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1478 (2010) (observing that because of changing landscape of federal immigration law, deportation or removal "is now virtually inevitable for a vast number of noncitizens convicted of crimes"); *State v. Jimenez*, 987 S.W.2d 886, 888-89 (Tex. Crim. App. 1999) ("That a guilty plea *may* result in deportation is generally considered a collateral consequence." (emphasis added)).[2]

---

[2] *But see Ex parte Wongjaroen*, No. 14-07-00593-CR, 2008 Tex. App. LEXIS 8319, at *8-11 n.2 (Tex. App.—Houston [14th Dist.] Nov. 6, 2008, pet. ref'd) (substitute mem. op., not designated for publication) (questioning whether applicant had sufficiently invoked trial court's jurisdiction but addressing merits of applicant's claims "in an abundance of caution"). The State relies on *Wongjaroen* in arguing that the trial court lacked jurisdiction in this case. To the extent that *Wongjaroen* may be applicable here (and setting aside the fact that it has no precedential value as an unpublished opinion), we find the court's analysis unpersuasive and contrary to the statutes and precedent cited above. We also note that the jurisdictional concern raised in *Wongjaroen* related to the sufficiency of the evidence in the habeas record rather than the legal question of whether the possibility of deportation constitutes a collateral legal consequence. *See id.* at *10 n.2 ("Here, appellant has provided *no evidence* that her misdemeanor conviction has impacted her immigration status." (emphasis added)).

**Ineffective assistance of counsel**

We now proceed to the merits of Ali's claim. Ali asserts that his plea was involuntary due to the failure of counsel to sufficiently warn him of the immigration consequences of his guilty plea. The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Strickland*, 466 U.S. 668, 687-94 (1984). An applicant must show (1) that his counsel's performance was deficient and (2) "that there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance." *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 694). The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In the context of guilty pleas, the first half of the *Strickland* test is applied in the same manner as in other contexts. *See Hill*, 474 U.S. at 58. In other words, the defendant must show that counsel's advice "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The "prejudice" requirement, on the other hand, is applied somewhat differently. The focus of

9

the prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*

The Supreme Court has held that counsel's "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel" and that "*Strickland* applies" to a claim that counsel's advice regarding the risk of deportation was deficient. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1481-82 (2010).[3] According to the Supreme Court, "The weight of prevailing professional norms supports the view that counsel must advise [his] client regarding the risk of deportation." *Id*. at 1482. However, the extent of counsel's advice depends on the terms of the relevant statute. When "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" of a conviction, i.e., the "deportation consequence is truly clear," counsel's advice concerning the risk of deportation must be "equally clear." *Id*. at 1483. On the other hand, "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*.

---

[3] Prior to *Padilla*, many courts, including the Texas Court of Criminal Appeals, had held that the Sixth Amendment right to the effective assistance of counsel did not apply to advice regarding the risk of deportation, because deportation was merely a "collateral consequence" of a conviction. *See, e.g.*, *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). However, in *Padilla*, the Supreme Court explained that because deportation had "a close connection to the criminal process," the "collateral versus direct distinction" is "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation." 130 S. Ct. 1473, 1482 (2010).

The removal statute at issue in this case, as was at issue in *Padilla*, provides in relevant part that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). As the Supreme Court noted in *Padilla*, "virtually every drug offense except for only the most insignificant marijuana offenses" is a deportable offense under this statute. 130 S. Ct. at 1477 n.1. Nevertheless, the State contends on appeal that "it is unclear" whether the offense to which Ali pleaded guilty, delivery of drug paraphernalia, is actually a crime "relating to a controlled substance."[4] Thus, in the State's view, defense counsel "had no duty to convey to [Ali] that his plea of guilty would make him 'deportable' under federal immigration law; defense counsel only needed to convey that a conviction 'may carry a risk of adverse immigration consequences' to comply with *Padilla*." Additionally, the State observes that at the time of Ali's guilty plea in 2009, *Padilla* had not been decided. It is an open question whether *Padilla* applies retroactively.[5]

---

[4] We note that a person commits the offense of delivery of drug paraphernalia "if the person knowingly or intentionally delivers . . . drug paraphernalia knowing that the person who receives or who is intended to receive the drug paraphernalia intends that it be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal *a controlled substance* in violation of this chapter or to inject, ingest, inhale, or otherwise introduce into the human body *a controlled substance* in violation of this chapter." Tex. Health & Safety Code Ann. § 481.125(b) (West 2010) (emphasis added).

[5] At least two Texas intermediate appellate courts have held that *Padilla* applies retroactively. *See Ex parte De Los Reyes*, 350 S.W.3d 723, 729 (Tex. App.—El Paso 2011, pet. granted); *Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 Tex. App. LEXIS 4034, at *12-19 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed) (op., designated for publication). However, federal circuit courts are split on the issue. *Compare, e.g., United States v. Orocio*,

11

We need not decide today, however, whether *Padilla* applies retroactively and, if so, whether counsel's advice to Ali was deficient. Instead, we can decide this case on the second prong of the *Strickland* inquiry, prejudice. *See* 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Even assuming that *Padilla* applies retroactively to this case, *Padilla* did not change the standard for proving prejudice. *See* 130 S. Ct. at 1487 ("Whether Padilla is entitled to relief will depend on whether he can demonstrate prejudice . . . a question we do not reach because it was not passed on below."). Ali still had a burden to prove, by a preponderance of the evidence, that there is a reasonable probability that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Stated another way, he "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1473 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). "Surmounting *Strickland*'s high bar is never an easy task," and "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland*'s prejudice

---

645 F.3d 630, 641 (3d Cir. 2011) (holding that *Padilla* applies retroactively) *with United States v. Chang Hong*, 671 F.3d 1147, 2011 U.S. App. LEXIS 18034, at *15-34 (10th Cir. 2011) (holding that *Padilla* announced a new rule of constitutional law and thus does not apply retroactively) *and Chaidez v. United States*, 655 F.3d 684, 687-94 (7th Cir. 2011) (same).

prong." *Id*. at 1485 & n.12. The Texas Court of Criminal Appeals has further explained the prejudice inquiry in plea cases as follows:

> In the ineffective assistance of counsel context, the narrowed prejudice inquiry is designed to ensure that the defendant would actually have availed himself of the proceeding in question, so that he really is in the same position as someone whose rights were denied by the trial court: "counsel's deficient performance must actually cause the forfeiture [of the proceeding in question]. If the defendant cannot demonstrate that but for counsel's deficient performance, he would have [availed himself of that proceeding], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."

*Johnson v. State*, 169 S.W.3d 223, 231-32 (Tex. Crim. App. 2005) (quoting *Flores-Ortega*, 528 U.S. at 484).[6] "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (citing *Hill*, 474 U.S. at 60).

In determining whether an applicant would not have pleaded guilty but for counsel's deficient advice, a court is to consider "the circumstances surrounding the plea and the gravity of the misrepresentation material to that determination." *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999). "Even when a defendant wholly relies upon erroneous advice of counsel, the magnitude of the error as it concerns the consequences of the plea is a relevant factor; not every reliance on erroneous advice is sufficient to justify rendering the plea vulnerable to collateral attack." *Id*. We therefore proceed to review the circumstances surrounding Ali's plea in light of the evidence presented to the trial court.

In Ali's affidavit, he explained that his family is from Pakistan and that they entered the United States in 1995, when Ali was ten years old. According to Ali, he attended

---

[6] In this case, the "proceeding in question" is a jury trial.

13

elementary school, junior high, and high school in the United States and graduated from Austin's Westlake High School.

Ali averred that he had met with counsel two times prior to pleading guilty. Ali claimed that at the first meeting, he told counsel that he was not a legal permanent resident, that he had a pending application for legal permanent residency as a beneficiary of his father's approved immigrant worker petition, and that "it was important that I not be deported." Ali further averred that at the second meeting, counsel had informed him "that the prosecution had made a good plea offer" and that Ali "should accept the offer to conclude the case." According to Ali, counsel also advised Ali that if he "accepted the prosecutor's offer and pleaded guilty," he "would not face any immigration problems." Ali explained,

> [Counsel] said that immigration problems would arise if I were to plead guilty to a felony or if I received a sentence of imprisonment that was in excess of one year. Since the prosecutor offered me a deal to plead guilty to a misdemeanor offense with a sentence of less than one year, [counsel] said I would not have any immigration problems.

Ali also claimed that at no time did counsel recommend to him that he should contact an experienced immigration lawyer to assist him with his case.

According to Ali, he would not have pleaded guilty if he had known the immigration consequences of his plea. He claimed,

> Had I known that my plea would subject me to potential detention by the immigration authorities and automatic deportation from the United States and that I would never again be able to return to the United States to live with my family and to be near my family, I would never have agreed to this plea agreement.

14

Ali added that his parents and two younger brothers are legal permanent residents and that "it would be a great hardship for all of us if I were to be removed to Pakistan." Ali provided no evidence other than his affidavit to support his assertions.

Trial counsel, in his affidavit, provided a different account of the circumstances surrounding Ali's plea. First, counsel provided detailed information on his background as an attorney. Counsel has practiced criminal law since 1989, is a former prosecutor, and has practiced criminal defense for "the better part of the past 20 years." Counsel averred that since 2006, he has held the position of "general counsel for the Greater Austin Merchants Association (GAMA), an association of 350 convenience store owners in and around Austin who are of Pakinstani and Hindu origin." Counsel explained his position and experience as follows:

> Representing Pakistani and Indian store owners and their families almost exclusively since 2006, I am very familiar with their issues involving immigration, their status as citizens, permanent residents, applying for citizenship, student and work visas, and other immigration issues that may affect them and their families. However, I do not practice immigration law. I am a trial attorney and I always advise my GAMA clients to seek the advice of competent immigration attorneys regarding their immigration issues. Almost all of my clients that have emigrated from Pakistan or India already have immigration lawyers that helped them and their families make the move to the United States.

Counsel next described his knowledge of the circumstances surrounding this case. He explained that in 2008, "a task force involving the Williamson County Sheriff's Office, Georgetown Police Department, Round Rock Police Department, Cedar Park Police Department, Austin Police Department, the Texas Department of Public Safety, and the Department of Homeland Security made a large sweep of convenience stores in Williamson and Travis County. They conducted a complex investigation involving store owners and/or employees who were selling

drug paraphernalia from their stores." Counsel recalled that approximately eight of the GAMA stores were involved in the raid, that arrests were made that included both felony and misdemeanor charges, and that his clients included both Ali and his brother Rizwan.

According to counsel, he discussed the case with both brothers "on many occasions." The discussions included "every aspect of the cases, including the strengths and weaknesses of the State's cases, as well as the potential immigration problems in the event they were convicted." Counsel also averred that he reviewed the State's evidence with the brothers, including video recordings of the "buys" by the undercover officers. In his affidavit, counsel summarized the review of the evidence as follows:

> The officer had video and audio recording devices attached to his person and he entered the store for the purpose of buying the contraband. The videos show the officer moving from aisle to aisle and ultimately approaching the counter where Applicants (both Applicants in two separate videos with virtually identical facts) were working. The officer asked for a "brown bag special." Without being questioned by Applicant what the officer meant by "brown bag," Applicants produced a brown paper bag and in it they placed a glass pipe capable of being used to smoke tobacco or some other substance, a lighter, and a piece of Brillo Pad, a screen which could be used to catch the burnt ashes in the device.

> The video and audio in both videos clearly showed both brothers responding to the requests made by the undercover officer and it was apparent to both brothers and me from viewing of the tapes that they were under no mistaken impression that they were producing items that constituted drug paraphernalia. We also examined the video of large sums of cash loose on the shelves below the counter, scales, pipe cleaning items, 1x1 Ziploc baggies, and other items that could easily be construed as drug paraphernalia.

Counsel further averred that the brothers' defense to the charges was that "they did not know that the pipe and other items were going to be used for an illegal purpose." Counsel explained, "They tried to convince me of this [and] I explained to them that while I believed

16

them, what I believed was not important. We discussed at length whether or not a jury in Williamson County was going to believe them. . . ." Counsel added, "While they maintained their innocence to me privately, they acknowledged that the evidence against them was overwhelming and that it was virtually certain that they would not be believed."

According to counsel, he did discuss "possible immigration issues" with the brothers, although he did not specify the issues that he discussed. Counsel recalled, "Applicant and his brother and I discussed the problems they would have pleading to this case or otherwise having a conviction on their records because of the possible immigration issues. I discussed this with both brothers and I also discussed it with their father. I discussed it with them as a group (with their father) and with their father separately."[7] Counsel also claimed that "after viewing the videotapes, the brothers told me they went to see their immigration attorney."

Counsel continued, "Both brothers concluded that it was not likely that they were going to prevail at trial, as the police had them on video and audiotape committing the offenses." According to counsel, Ali decided he wanted to take the plea offer while Ali's brother wanted to go to trial. However, Ali changed his mind after entering his plea at a court appearance on January 5, 2009. Counsel averred that the trial court allowed Ali to withdraw his plea and discuss the matter further with his brother and counsel. Counsel explained that their subsequent discussions included "the strengths and weaknesses of the State's case," "the presence of all the drug paraphernalia seized

---

[7] Counsel added that on at least one occasion, he had a "group discussion" with "approximately six separate defendants" regarding "the potential problems with their individual immigration statuses." However, counsel acknowledged that his "file notes do not clearly reflect that the brothers were present during this group discussion."

17

at the scene," "the impending trial date," and "the likelihood of a conviction and a more [severe] punishment being assessed than what was currently being offered."[8] Counsel added,

> [W]e also discussed again [] at length the possible difficulty with their immigration. It was obvious that both brothers were torn because while they maintained their innocence, they knew it was virtually certain they would be convicted by a Williamson County jury. However, they did not want to do the 30 days in jail and they did not know for certain what the consequences would be with regard to their immigration. Again, I instructed them to consult with their immigration lawyer and they told me they did consult with him.

"After considering the matter at length," counsel continued, "both brothers decided they wanted a trial." However, on the date of trial, Ali and his brother changed their minds and decided to accept the plea offer. In his affidavit, counsel concluded,

> Prior to entering the plea, both brothers went over their rights and their waivers with me in detail and this included the specific admonition that if the defendant was not a United States citizen, a plea of guilty or no contest to a criminal charge may result in deportation, exclusion of admission to the United States, or denial of naturalization under federal law.

In addition to the affidavits of counsel and Ali, the trial court also considered the affidavit of Hasibullah Karim. Karim was initially charged in the sting operation and was also represented by Ali's counsel.[9] Karim, who is from Afghanistan, averred that counsel "was very careful when he discussed my case with me privately to tell me that any type of criminal conviction could possibly result in adverse consequences with regard to my immigration status." Karim further

---

[8] The offer, according to counsel, "was 30 days in jail as a condition of probation, plus 12 months in jail probated for 12 months."

[9] According to Karim, his case was eventually dismissed because "the officers made a mistake in identifying me as a person who committed the offense."

18

averred that he was with counsel and the Ali brothers when counsel reviewed the videotape evidence in their cases. According to Karim, "the two brothers were the same persons videotaped in their sting operations." Karim added,

> I was present when [counsel] discussed the strengths and the weaknesses of the State's cases against me and the two brothers. While the case against me was weak, it was obvious to me that the evidence against the brothers was very strong. During this conversation, I was present when [counsel] told us (mostly the brothers) about the problems we would have with our immigration status if there was any type of a criminal conviction. [Counsel] was very clear to us that he was not an immigration lawyer and he advised us that we should seek advice from our own immigration attorneys to advise us of our rights in the event we pleaded guilty or if we were found guilty by a judge or jury.

In its findings of fact and conclusions of law, the trial court made express findings regarding the credibility of the affiants. The court stated that it "has known [counsel] as a criminal defense attorney for many years," and that it had found counsel's affidavit to be "credible, reliable and an accurate depiction of the events that occurred with Defendant." The trial court also found that Karim's affidavit "corroborated counsel's account of the events." The trial court added, "Upon review of the affidavits provided by the parties to this case, this Court concludes that the rendition of facts and events described by [counsel] and Mr. Karim is credible, trustworthy, and is corroborated by the Court's own recollection of events." On the other hand, the trial court "specifically disbelieve[d] the allegations contained in Applicant's affidavit purporting that [counsel] failed to communicate the possibility of immigration consequences as a result of Defendant's plea."

Many of the trial court's conclusions focused on the first prong of the *Strickland* inquiry. However, in addition to concluding that counsel's performance was not deficient, the

19

trial court also concluded that Ali failed to show prejudice. Specifically, the trial court concluded that,

> [G]iven the benefits Applicant obtained by virtue of his plea bargain with the State, including the initial pursuit of only a Class A misdemeanor and the negotiated plea bargain [that] was imposed and that Applicant twice entered a plea of guilty, this Court concludes that Applicant has failed to adequately demonstrate that but for [counsel's] perceived ineffective assistance, Applicant would have insisted on a jury trial. Thus, Applicant has also failed to sufficiently establish that the second prong of *Strickland* has been violated by [counsel].

The trial court also concluded that "Applicant has presented no credible evidence that he has been harmed based on the alleged attorney violations of [counsel]." Finally, the trial court concluded that "Applicant's contentions in his Application for Writ of Habeas Corpus are wholly without merit, that Applicant received effective assistance of counsel, that Applicant has received the benefit of his plea bargain, and that Applicant has suffered no harm as a result of his plea."

We cannot conclude on this record that the trial court abused its discretion in denying Ali's habeas application. Again, to be entitled to relief, Ali needed to convince the court that a decision to reject the plea bargain and go to trial would have been "rational under the circumstances." *Padilla*, 130 S. Ct. at 1473. The circumstances of this case, as summarized above, included evidence of Ali's guilt that was, in the words of counsel and Karim, "overwhelming" and "very strong." This evidence included video and audio recordings "clearly show[ing]" Ali and his brother delivering drug paraphernalia to an undercover officer. The video recording also showed large sums of cash loose on the shelves below the counter, scales, pipe cleaning items, Ziploc baggies, and other items that, in counsel's view, "could easily be construed as drug paraphernalia." The brothers' planned defense to the crime, according to counsel, was that "they did not know that

20

the pipe and other items were going to be used for an illegal purpose." However, counsel averred that "it was apparent to both brothers and me from viewing of the tapes that they were under no mistaken impression that they were producing items that constituted drug paraphernalia." Counsel further averred that, "While they maintained their innocence to me privately, they acknowledged that the evidence against them was overwhelming and that it was virtually certain that they would not be believed" by a Williamson County jury. Counsel added, "Both brothers concluded that it was not likely that they were going to prevail at trial, as the police had them on video and audiotape committing the offenses." Thus, if Ali had rejected the plea offer, gone to trial, and been convicted—which Ali knew was "virtually certain," according to counsel—he would have risked the same deportation consequences and, in addition, could have been sentenced to up to one full year of actual jail time. *See* Tex. Penal Code Ann. § 12.21 (West 2011). In light of this and other evidence, the trial court could have reasonably concluded that it would not have been rational under the circumstances for Ali to reject the plea bargain and go to trial. *See Hill*, 474 U.S at 59 (explaining that prejudice inquiry in plea-bargain cases includes examination of likelihood of success at trial); *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (considering "overwhelming evidence of guilt" in concluding that "no rational defendant in [applicant's] position would have proceeded to trial").[10]

---

[10] We also observe that the record supports a finding by the trial court that this was not a case in which Ali was uninformed of the immigration consequences of his guilty plea. Counsel averred that he discussed "possible immigration issues" with Ali on multiple occasions and that Ali had informed him that he had spoken with an immigration attorney prior to pleading guilty. Additionally, it is undisputed that Ali read and signed an admonishment stating, "If Defendant is not a United States citizen, a plea of 'GUILTY' or 'NO CONTEST' to the offense charged may result in deportation, exclusion from admission to this country, or the denial of naturalization under federal law." Thus, even assuming that counsel's advice was not as explicit as *Padilla* requires it

21

The only evidence that Ali presented which tended to show that he would have insisted on going to trial are statements in his affidavit to that effect. However, the trial court would not have abused its discretion in disbelieving these statements. *See, e.g.*, *Shanklin v. State*, 190 S.W.3d 154, 167 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd, improvidently granted*, 211 S.W.3d 315 (Tex. Crim. App. 2007) ("The trial court is not required to believe factual statements contained within an affidavit, even when they are uncontradicted by other affidavits."); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) ("The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted."). Here, the trial court expressly found that Ali provided "no credible evidence" that he was harmed by counsel's allegedly deficient performance, and we are to defer to the trial court's credibility determination. *See Thompson*, 153 S.W.3d at 425; *Manzi*, 88 S.W.3d at 242-44; *see also Ex parte Hamad*, No. 05-11-01599-CR, 2012 Tex. App. LEXIS 1496, at *13-15 (Tex. App.—Dallas Feb. 27, 2012, no pet. h.) (op., not designated for publication) ("[A]ppellant's ability to show he suffered prejudice arising from counsel's deficient advice depends critically upon his credibility. . . . The trial court adjudged appellant's affidavit averments to be not credible. . . . Without credible evidence that appellant would have insisted on a trial had counsel advised him he would be deported if he entered a guilty plea, we cannot conclude appellant met his burden under the second prong of the *Strickland* standard for proving ineffective assistance of counsel."); *Ex parte Victorio*, No. 05-11-01008-CR, 2012 Tex. App. LEXIS 819, at *14-16 (Tex. App.—Dallas Feb. 1, 2012, pet. filed) (op.,

---

to be, the trial court would not have abused its discretion in finding the allegedly deficient performance harmless under the particular circumstances of this case.

not designated for publication) (deferring to trial court's credibility determination in concluding that applicant suffered no prejudice); *Ex parte Tovilla*, No. 14-10-01120-CR, 2012 Tex. App. LEXIS 240, at *7-8 (Tex. App.—Houston [14th Dist.] Jan. 12, 2012, pet. ref'd) (mem. op., not designated for publication) (same).[11]

Viewing the above evidence in the light most favorable to the trial court's ruling, and deferring to the trial court's credibility determinations as we should, we cannot conclude that the trial court abused its discretion in denying Ali's habeas application on the ground that Ali failed to prove by a preponderance of the evidence that but for counsel's allegedly deficient advice, he would not have pleaded guilty and would have insisted on going to trial. We overrule Ali's sole issue.

---

[11] *But see Ex parte Romero*, 351 S.W.3d 127, 131 (Tex. App.—San Antonio 2011, no pet.); *Ex parte De Los Reyes*, 350 S.W.3d 723, 731 (Tex. App.—El Paso 2011, pet. granted); *Ex parte Tanklevskaya*, No. 01-10-00627-CR, 2011 Tex. App. LEXIS 4034, at *29-33 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed) (op., designated for publication). In these cases, one of which Ali cites in his brief (*Tanklevskaya*), the reviewing courts reversed trial court orders denying habeas relief on the basis that the applicant either testified or averred that he or she would not have pleaded guilty but for counsel's deficient advice. We are not persuaded that we should follow these cases. To the extent that the reviewing court in each case appears to have disregarded implied factual findings by the trial court that the applicant's testimony or affidavit was not credible, the cases are contrary to well-established precedent holding that reviewing courts are to defer to the trial court's factual findings and credibility determinations. *See, e.g.*, *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006); *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005); *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). Moreover, in each case, the reviewing court appears not to have undertaken an analysis of whether the decision to reject the plea bargain and go to trial was "rational under the circumstances" of each case. Instead, the reviewing court appears to have simply accepted as true the statements in the applicant's testimony or affidavit. We decline to adopt such an approach.

**CONCLUSION**

We affirm the trial court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   May 17, 2012

Publish