# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00169-CR

### Ex parte Jose Eduardo Torres

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-127, HONORABLE BRUCE R. BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jose Eduardo Torres appeals from the habeas court's order denying his application for a writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.072. *See* Tex. Code Crim. Proc. art. 11.072. Torres contends that the habeas court erred by finding that he was not prejudiced by his counsel's allegedly deficient performance in failing to advise him of the clear immigration consequences of pleading guilty to the offense of delivery of marijuana for remuneration, in an amount less than four ounces, in a drug free zone, a state jail felony. *See* Tex. Health & Safety Code §§ 481.120, .134(e). We hold that the court did not abuse its discretion in denying Torres's habeas application.

## BACKGROUND

According to the offense report contained in the record, on April 21, 2011, Deputy David Miller and Deputy Danny Dufur were contacted by Smithson Valley High School assistant principal Corbee Wunderlich, who requested their assistance in the senior cafeteria. While on their way to the cafeteria, the officers saw Torres, a Smithson Valley High School student, running down

one of the hallways in the school. When they arrived at the cafeteria, Wunderlich told the officers that he had just witnessed the exchange of cash for marijuana between Torres and another student. Wunderlich stated that he saw Torres give the student a bag of what he believed to be marijuana and the student give Torres some cash in return. Wunderlich told the officers that when he approached Torres and the other student they "became evasive and very nervous." Torres ran away from Wunderlich, and the other student would not show Wunderlich what was in his hand. The other student then walked past a trash can and threw away a plastic baggie, which Wunderlich believed contained marijuana. According to Wunderlich, Adriana Trevino, a Smithson Valley High School teacher, also witnessed the other student throwing the baggie into the trash can.

Deputy Miller looked in the trash can and saw a small plastic baggie containing a green leafy substance that he believed, based on his training and experience, to be marijuana. He retrieved the baggie and later placed it in an evidence bag and secured it in an evidence locker. Laboratory testing later revealed that the baggie contained 0.09 ounces of marijuana. According to Deputy Miller, he observed the other student "swaying back and forth" and exhibiting body language he believed indicated that the other student might flee the scene. Deputy Miller and Deputy Dufur took the other student into custody while Wunderlich went to look for Torres. Deputy Miller then joined Wunderlich in searching for Torres. Wunderlich located Torres in another school hallway, and Deputy Miller took him into custody. Deputy Miller gave Torres his *Miranda* warnings and began preparing paperwork related to the process of booking Torres. Deputy Miller searched the other student's backpack and found green residue that he believed, again based on his training and experience, to be marijuana residue. He also found a homemade smoking pipe and a lighter in the

2

backpack. Deputy Miller and Deputy Dufur then transported Torres and the other student to the Comal County jail.

Once at the jail, Deputy Miller asked the other student if he wanted to talk, and the student said he did. Deputy Miller and Deputy Dufur gave the other student his *Miranda* warnings and began asking him questions. According to Deputy Miller, the other student stated that he had given Torres $20 and received an unidentified amount of change in return, along with the baggie. The other student stated that he was nervous when approached by Wunderlich, and admitted that he discarded the baggie in the trash can. He also stated that the homemade pipe was his and that it had been given to him by another student to smoke marijuana he purchased from Torres. Ultimately, the other student was booked into jail for possession of less than 2 ounces of marijuana, and Torres was booked into jail for delivery of marijuana to a minor.

The record also contains Trevino's voluntary written statement. According to her statement, Trevino was on her way to the office to meet with a parent when she walked past several students and heard Wunderlich call a student to him. This caught her attention and as she turned to look that way, she saw a student walk to a trash can and throw a plastic bag or baggie into the trash can. The student was the other student arrested with Torres. She recognized him because he had been her student during the previous school year. Wunderlich also gave a voluntary written statement in which he described having seen Torres and the other student exchange money for marijuana. As he approached them they became evasive, but he was able to detain the other student. Wunderlich stated that the other student would not show him what was in his hand, and then threw a baggie into a trash can. According to Wunderlich, Trevino also saw the baggie in the trash. Wunderlich then went to get Torres, and once they found Torres, Deputy Miller took him into custody.

3

Based on the events described above, Torres, who is not a United States citizen, was charged with delivery of marijuana in a drug-free zone. On September 10, 2013, Torres appeared in court with his attorney, Kimbel Brown, and pleaded guilty to the charged offense. At the plea hearing the following colloquy took place:

Court:     It's a state jail felony. It's punishable from 180 days to two years in a state jail facility and/or you could be assessed a fine of up to $10,000.

Torres:    Yes, sir.

Court:     Okay. You also need to understand—and I know that Mr. Brown has talked to you about this, but you need to understand , if you're found guilty of this particular charge, you would be susceptible to being deported and returned to your native land. Do you understand that as well?

Torres:    Yes. Yes, sir.

Court:     Do you understand, then, the consequences of entering a plea in this case?

Torres:    Yes, sir.

. . . .

Court:     Now, if I do admit—you need to understand, sir, that if I do admit State's Exhibit Number 1 into evidence, you'll be making a judicial confession to the charges that have been brought against you. You understand that?

Torres:    Yes, sir.

Court:     And you also understand, sir, once again, that in making that confession, if I were to find you guilty and you were convicted, that you would be susceptible to being, once again, deported back to your native country—

Torres:    Yes, sir.

4

| Court: | —country of origin? Do you understand that? |
|---|---|
| Torres: | Yes, sir. |

· · · ·

| Counsel: | Your Honor, I would like to state on the record that I did talk to Daniel McCarthy, an immigration attorney, and another attorney that Mr. Torres also talked to that indicated because of the language in the complaint that says possession—possession with intent to deliver with—by actual or construction—constructive delivery would make it—this is a deportable offense. And, unfortunately, the State was not willing to go down to a Class B misdemeanor to avoid the immigration consequences. |
|---|---|
| Court: | Mr. Torres, did you talk to an immigration attorney? |
| Torres: | Yes, sir. I did. |
| Court: | Did they make you aware of the—once again, of the circumstances of your case and the possible ramifications of it? |
| Torres: | Yes, sir. |
| Court: | Okay. But you are still entering your plea? Is that correct? |
| Torres: | Yes, sir. |

The trial court then accepted Torres's plea of guilty and placed him on four years' deferred adjudication community supervision with 200 hours of community service and $140 in restitution. As a result of his plea, Torres was then taken into custody by agents of the United States Department of Immigration and Customs Enforcement (ICE).

Torres filed an application for a writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.072. In the application, Torres asserted that his guilty plea was involuntary due to the ineffective assistance of counsel. Specifically, Torres maintained that his counsel's performance was deficient because he did not adequately advise Torres of the clear

5

immigration consequences of his guilty plea in violation of *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the Supreme Court held that counsel's advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel," and that "*Strickland* applies" to a claim that counsel's advice regarding the risk of deportation was deficient. 559 U.S. at 366. Thus, a noncitizen who pleads guilty to a deportable offense may seek post-conviction relief on the ground that the plea was involuntary because counsel did not provide effective assistance by informing him of the immigration consequences of that plea. *See Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980) (guilty plea is not voluntary if made as result of ineffective assistance of counsel).

In support of his application, Torres submitted the affidavit of his trial counsel, Kimbel Brown. Brown averred that approximately one month before Torres was set to plead to the charged offense, he learned that Torres was not a United States citizen, but a lawful permanent resident. Brown stated that he advised Torres to confer with an immigration attorney and that he, too, spoke to an immigration attorney to "get analysis" of the potential consequences of a conviction on Torres's legal status. Brown averred that he made "every attempt" to get the Comal County District Attorney to agree to a plea of simple possession of marijuana, which he believed would have "protected Torres under 4A11 of the Federal Sentencing Guidelines." Brown stated that he learned from immigration counsel that a conviction of the charged offense would make Torres "deportable," but that he was unaware that Torres would be ineligible for any type of discretionary relief from the deportation proceedings. Brown stated that, as a result, he did not advise Torres that he would be subject to deportation without discretionary relief and that he would automatically be placed in removal proceedings. Brown stated that he advised Torres that he "may or may not be deported,

6

and that ICE may not seek to deport him because of the small amount of marijuana involved." According to Brown's affidavit, he further advised Torres to seek additional immigration advice after entering his plea in order to apply for status under the "DREAM Act." Brown averred that he later learned that this advice was incorrect and that the consequence of Torres's pleading guilty to the charged offense was deportation.

Torres also submitted his own affidavit in which he averred that, before pleading guilty, he told Brown that he was a lawful permanent resident, not a United States citizen. According to Torres, he knew that Brown had conferred with an immigration attorney. Torres stated that Brown told him he "may be deportable." Brown further told Torres that he "may or may not be deported by ICE" because of the small amount of marijuana involved. Torres stated that Brown told him that if he did not get in any more trouble, ICE would not come looking for him, and that Brown never told him that he was "deportable without the ability to receive discretionary relief, and that [his] deportation was certain." Torres said that Brown also advised him to speak to an immigration attorney after pleading guilty because he may be eligible for relief under the "DREAM Act." Torres further stated, "Based upon Mr. Brown's advice, I believed that there was a chance that I would not be deported. It was for this reason that I pled guilty."

In his affidavit, Torres stated that he has lived in the United States since he was eight years old and received lawful permanent resident status in 2005. His parents and eight siblings live in the United States and all but one of them is a lawful permanent resident. Torres's affidavit states that, had he known that it would result in automatic deportation, he would not have pleaded guilty but would have insisted on going to trial. He stated that even though, if convicted, he could receive

7

a punishment of up to two years in state jail, "[t]wo years in jail weighed against a lifetime of being banned from the country I know as my home is a chance I am absolutely willing to take."

The application was also supported by the affidavit of Juan Carlos Rodriguez, an immigration attorney who opined that the law clearly provided that deportation would result from a conviction for the offense to which Torres pleaded guilty. Rodriguez also opined that Brown's failure to specifically advise Torres of the clear immigration consequences of pleading guilty constituted ineffective assistance of counsel under *Padilla*. Although the affidavit does not address the issue, it does not appear that Rodriguez provided either Brown or Torres any legal advice prior to the plea, but rather served only to provide an expert opinion in support of Torres's application for writ of habeas corpus.

The court conducted a hearing on the application. Torres relied on the affidavits in lieu of live testimony. While not conceding that Brown's performance was deficient, the State focused mainly on its argument that Torres failed to establish that he had been prejudiced by any deficiency in Brown's admonitions regarding the immigration consequences of a guilty plea. *See Strickland v. Washington*, 466 U.S. 668, 693 (1984) (claims "alleging a deficiency in attorney performance" are subject to general requirement that defendant affirmatively prove prejudice). At the hearing, the trial court stated that it was not making a final ruling as to whether Brown's assistance was actually ineffective but, rather, was denying the application because Torres failed to establish prejudice resulting from Brown's alleged failure to adequately advise Torres of the consequences of a guilty plea. The court then signed an order denying the application. At Torres's request, the court filed findings of fact and conclusions of law. Torres then perfected this appeal, in which he argues that

8

the trial court erred by making findings of fact that were unsupported by the record and that the trial court abused its discretion by denying the application.

## DISCUSSION

### *Standard of Review*

We review a habeas court's decision on an application for a writ of habeas corpus under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). We afford almost total deference to the habeas court's determinations of historical fact that are supported by the record. *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). When reviewing the habeas court's denial of an application, we must view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d at 324. If the resolution of the ultimate question turns on the application of legal standards, we review those determinations de novo. *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

### *Ineffective Assistance of Counsel*

To prevail on an ineffective assistance claim, an applicant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) counsel's deficiency caused the defendant prejudice—that is, there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been

9

different.  *See Strickland*, 466 U.S. at 687-88, 694; *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010).  The applicant must prove both prongs of the test by a preponderance of the evidence, and failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness.  *Perez*, 310 S.W.3d at 893.

A defendant has the right to effective assistance of counsel in guilty-plea proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).  A guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014).  "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012).  When a person challenges the validity of a plea contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.  *See Ex parte Harrington*, 310 S.W.3d at 458.

When, as Torres contends is the case here, "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence" of a conviction, i.e., when the "deportation consequence is truly clear," counsel's advice must be "equally clear." *Padilla*, 559 U.S. at 369; *see also Ex parte Ali*, 368 S.W.3d 827, 834 (Tex. App.—Austin 2012, pet. ref'd). Failure to meet this standard may render plea counsel's performance deficient.  To establish prejudice, an applicant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.  The test is objective and turns on what

"a reasonable person in the defendant's shoes would do." *Ex parte Ali*, 368 S.W.3d at 835 (quoting

*United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988)). "In determining whether an applicant

would not have pleaded guilty but for counsel's deficient advice, a court is to consider 'the

circumstances surrounding the plea and the gravity of the misrepresentation material to that

determination.'" *Id.* at 835-36 (quoting *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App.

1999)). "Even when a defendant wholly relies upon erroneous advice of counsel, the magnitude

of the error as it concerns the consequences of the plea is a relevant factor; not every reliance on

erroneous advice is sufficient to justify rendering the plea vulnerable to collateral attack." *Ex parte

Moody*, 991 S.W.2d at 858. When the prejudice prong of the *Strickland* test is dispositive, as it is

here, we will address only that prong on appeal. *Ex parte Ali*, 368 S.W.3d at 835; *see also Strickland*,

466 U.S. at 697.

### No Prejudice

In his second issue, Torres asserts that the trial court abused its discretion by denying

the application on the ground that Torres failed to show by a preponderance of the evidence that he

was prejudiced by Brown's allegedly deficient performance. As we observed in *Ex parte Ali*, the

Texas Court of Criminal Appeals has explained the prejudice inquiry in plea cases as follows:

> In the ineffective assistance of counsel context, the narrowed prejudice inquiry is
> designed to ensure that the defendant would actually have availed himself of the
> proceeding in question, so that he really is in the same position as someone whose
> rights were denied by the trial court: "counsel's deficient performance must
> actually cause the forfeiture [of the proceeding in question]. If the defendant cannot
> demonstrate that but for counsel's deficient performance, he would have [availed
> himself of that proceeding], counsel's deficient performance has not deprived him
> of anything, and he is not entitled to relief."

11

*Johnson v. State*, 169 S.W.3d 223, 231-32 (Tex. Crim. App. 2005) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)). We must determine whether Torres proved by a preponderance of the evidence that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. *See Ex parte Ali*, 368 S.W.3d at 835. This requires proof that a decision to reject the plea bargain was rational under the circumstances. *See Ex parte Harrington*, 310 S.W.3d at 458. This inquiry is made on a case-by-case basis in which we consider the circumstances surrounding the plea and the gravity of the alleged failure. *See Ex parte Ali*, 368 S.W.3d at 836.

The record indicates that Torres was observed by a school principal conducting a sale of what was confirmed to be marijuana to another student. There was no evidence of any factual or legal defenses that Torres could advance at trial to avoid conviction. Instead, Torres's counsel argued that Torres could be acquitted if the State was unable to get certain statements and other evidence of Torres's guilt admitted at trial.[1]

The circumstances of his decision to plead guilty, as set forth above, are that Torres was told by his counsel that, although the offense to which he was considering pleading guilty would make him deportable, he "may or may not" be deported, and that ICE may not seek to deport him due to the small amount of marijuana involved. Thus, Torres's decision to plead guilty to the offense was not predicated on his mistaken belief that there was no risk that he would be deported as a

---

[1] The Texas Court of Criminal Appeals has instructed that, in the involuntary plea context, "the defendant need not show that his case would have received more favorable disposition had he gone to trial." *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 485-86 (2000)). But to determine whether it would be rational for a defendant to insist on going to trial, a habeas court properly considers evidence concerning the likelihood of success at trial. Overwhelming evidence of guilt and no evidence of a legal or factual defense makes it more likely that a decision to go to trial would be irrational. *See Ex parte Ali*, 368 S.W.3d 827, 840 (Tex. App.—Austin 2012, pet. ref'd).

12

consequence. Torres was advised to, and did, consult with immigration counsel, but he did not testify or otherwise explain to the habeas court what advice he was given by that attorney with respect to the immigration consequences of a guilty plea. Notably, Torres did not represent to the habeas court that immigration counsel also incorrectly advised him that he "may or may not be deported." When asked at the plea hearing whether he understood the consequences of his plea, Torres affirmed to the trial court that he had consulted with an immigration attorney who had "made him aware of . . . the circumstances of [his] case and the possible ramifications." Torres's representation to the court at the plea hearing that he had conferred with an immigration attorney, coupled with his failure to testify at the habeas proceeding that the immigration attorney gave him inaccurate information, supports the inference that this was not a case in which Torres was uninformed of the immigration consequences of his guilty plea. Thus, even assuming Brown's advice did not meet the *Padilla* standard, the trial court would not have abused its discretion in finding Brown's allegedly deficient performance harmless under the particular circumstances of this case.

While Torres stated that he would not have pleaded guilty had he known that his plea would result in automatic deportation without the ability to seek discretionary relief, the trial court was free to disbelieve this statement. *See id.* at 840-41. Further, in his affidavit Torres averred that he would have insisted on a trial because "[t]wo years in jail weighed against a lifetime of being banned from [the United States] is a chance I am absolutely willing to take." This Court has expressly rejected an approach that "simply accept[s] as true the statements in the applicant's testimony or affidavit." *See id.* at 841 n.11. Rather, the standard we apply is whether a decision to reject a plea bargain and go to trial would have been rational under the circumstances.

13

The habeas court considered the strong evidence of Torres's guilt, the facts that he faced up to two years confinement and a $10,000 fine if convicted and would continue to face deportation if convicted at trial, the lack of evidence of any factual or legal defenses, and the lack of evidence of any other plea deal that would have helped him avoid deportation. These factors support the conclusion that a rational noncitizen defendant would likely not risk a trial since the result would be near-certain conviction with a harsher criminal penalty in addition to the same immigration consequences of pleading guilty. *See id.* at 840; *see also Ex parte Moreno*, 382 S.W.3d 523, 529-30 (Tex. App.—Fort Worth 2012, pet. ref'd) (no prejudice when no evidence that State would have considered or accepted plea bargain for charge not resulting in same immigration consequences). Viewing the evidence before the trial court in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion in denying Torres's habeas application. It was not an abuse of discretion for the trial court to conclude that Torres failed to prove by a preponderance of the evidence that there was a reasonable probability, sufficient to undermine confidence in the outcome, that, but for counsel's allegedly deficient advice, he would not have pleaded guilty and would have insisted on going to trial. *See Strickland*, 466 U.S. at 694 (under second prong of test "reasonable probability" is probability sufficient to undermine confidence in outcome); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (same). We overrule Torres's second issue.

In his first appellate issue, Torres complains that certain of the trial court's findings of fact were unsupported by the record. First, Torres challenges the trial court's finding that Brown "informed his client that he would be deported by pleading guilty to the offense as charged."

14

According to Torres, he was told he was "deportable," not that he would be deported. This finding goes to the issue of whether Brown's performance was deficient, an issue we need not decide, and is thus irrelevant to disposition of this appeal. Torres also challenges the trial court's finding that Brown "stated that [Torres] had also spoken to another attorney who had informed [Torres] that the delivery charge would result in [Torres] being deported." Torres contends that this finding is erroneous because Brown stated to the trial court only that the other attorney told Brown that the offense charged was a "deportable offense," and there was no evidence regarding what the attorney told Torres and "the record does not contain mention of outside counsel telling [Torres] that he was going to be deported." Our holding that the trial court did not abuse its discretion in concluding that Torres was not prejudiced by his counsel's allegedly deficient performance does not depend on this "finding," which purports to be nothing more than a recitation of Brown's representation to the trial court during the plea hearing. Rather, we considered the totality of the circumstances, including that Torres affirmed at the plea hearing that he had conferred with an immigration attorney and understood the consequences of his plea, yet failed to bring forward evidence at the habeas proceeding that the immigration attorney also misadvised him by telling him that he "may or may not be deported." Even were we to disregard the complained-of finding, we would reach the same conclusion. Finally, Torres complains of the trial court's finding that "a $20 bill was found folded up in [Torres's] pocket when he was arrested and later searched at the Comal County Jail." According to Torres, there is no evidence in the record to support this finding and it should not be considered as evidence tending to show that Torres would be convicted at trial. We did not, however, consider this finding as part of our review of whether the trial court abused its discretion in

15

concluding that Torres was not prejudiced by Brown's allegedly deficient performance. Our analysis of the likelihood-of-success-at-trial component of the prejudice inquiry was confined to the eyewitness accounts and Torres's failure to identify any factual or legal defenses to the charge. The finding that Torres had a $20 bill on his person is irrelevant to the disposition of the case. Consequently, we need not address the merits of the arguments contained in Torres's first appellate issue.

## CONCLUSION

Having concluded that the habeas court did not abuse its discretion in denying Torres's application for writ of habeas corpus, we affirm the order denying the writ.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   April 29, 2015

Do Not Publish