**Opinion issued December 19, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

**NOS. 01-13-00520-CR**
**01-13-00521-CR**
**01-13-00522-CR**

—————————————

## EX PARTE ANGEL JOSE SANCHEZ, Applicant-Appellant

**On Appeal from the 400th District Court**
**of Fort Bend County, Texas**
**Trial Court Cause Nos. 07-DCR-046058,**
**07-DCR-046059, and 09-DCR-052833**

## MEMORANDUM OPINION

Angel Jose Sanchez appeals from the trial court's denial of his application

for a writ of habeas corpus.[1] Sanchez contends that trial counsel in his underlying

conviction failed to provide accurate immigration advice as required under *Padilla*

*v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), amounting to ineffective

---

[1] *Ex parte Jose Angel Sanchez*, Case No. 07-DCR-046059, in the 400th Judicial District Court of Fort Bend County, Texas.

assistance of counsel in violation of the sixth amendment to the United States Constitution and, as a result, rendered his guilty plea involuntary. He further contends that he was not provided an interpreter, and thus he did not understand the consequences of the plea proceedings. We hold that the trial court acted within its discretion in denying the application and affirm.

## Background

In 2008, Sanchez, a citizen of Mexico residing in Texas, was charged with the offenses of sexual assault of a child and aggravated sexual assault. Through affidavits provided in connection with the habeas proceeding, Sanchez's trial counsel explained they advised Sanchez that he had a strong argument for exoneration and that his case should be tried. Sanchez, however, rejected their advice. In explaining his decision to plead guilty to the charges, Sanchez told trial counsel hat one of his children had just died and he did not want to risk not seeing his other children again. Sanchez instructed his trial counsel to accept the State's plea agreement, and he entered a guilty plea to each charge. Among other admonitions made before accepting Sanchez's guilty pleas, the trial court informed Sanchez that he would be required to comply with Chapter 62 of the Texas Code of Criminal Procedure, under which he must

> register and thereafter, under various circumstances, periodically verify registration information, with a local law enforcement agency in any city or county where Defendant resides, intends to reside,

2

moves to, visits, works, volunteers, or attends class, and in other circumstances detailed [in the statute].

The trial court admonished Sanchez that he would be subject to the registration requirement for life and that failure to comply with the sex offender registration laws is a felony offense.

Consistent with Sanchez's agreement with the State, the trial court assessed a sentence of two years' confinement. After Sanchez served his sentence, he was deported to Mexico. But he came into custody in Fort Bend County again in 2009, when he was charged with the second-degree felony offense of failure to register as a sex offender. Sanchez again reached a plea agreement with the State.

The record shows that the associate judge who presided over Sanchez's plea hearing on the failure-to-register charge is fluent in Spanish and regularly communicates with Spanish-speaking defendants in Spanish when necessary. Before entering his plea, Sanchez initialed each provision of a "Written Stipulation and Judicial Confession" reflecting his understanding of the charged offense and the terms of the plea agreement. He also confirmed that he "consulted fully" with his attorney before entering his plea and was satisfied that his attorney properly represented him. Sanchez pleaded nolo contendere to the charge, and the trial court assessed a three-year sentence of confinement. Sanchez served that sentence and is currently held on an immigration detainer by United States Immigration and Customs Enforcement.

By order of the trial court, Ralph Gonzalez, who was appointed to represent Sanchez in connection with the failure-to-register charge, submitted an affidavit in the habeas proceeding. In that affidavit, Gonzalez recounted his representation of Sanchez from September 2009, when Sanchez was charged, until Sanchez retained Kendric Ceasar to represent him. Gonzalez averred that he is fluent in Spanish and communicated with Sanchez in Spanish. Gonzalez did not have any problem communicating with Sanchez, and Sanchez never indicated that he had any problem understanding Gonzalez. According to Gonzalez, Sanchez asked about the effect of the charge on his immigration status in the United States, and Gonzalez responded that, because Sanchez was present in the United States illegally, he was deportable regardless of the outcome of his case. Gonzalez further informed Sanchez that he should expect to be deported again as a result of the case if he were to plead guilty or be found guilty, and that he should also expect to be deported again as a result of his guilty plea to his underlying convictions. The record contains no information concerning Ceasar's representation of Sanchez.

## Habeas Corpus

### I. Applicable Law and Standard of Review

Sanchez challenges the trial court's denial of his application for habeas corpus relief, contending that his trial counsel rendered ineffective assistance by

4

failing to accurately inform him, in language that he understands, that his guilty pleas would make him automatically subject to removal from the United States.

When reviewing a trial court's ruling on a habeas corpus application, we view the evidence presented in the light most favorable to that ruling, and we must uphold that ruling absent an abuse of discretion. *Ali*, 368 S.W.3d at 831 (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007)). We defer to a trial court's fact findings in habeas proceedings, particularly when they are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)); *see also Ex parte Wheeler*, 203 S.W.3d 317, 324 n.23 (Tex. Crim. App. 2006) (noting that we should also defer to trial court's "implicit factual findings" that support trial court's ultimate ruling); *Peterson*, 117 S.W.3d at 819 (noting same). We similarly defer to the trial court's application of the law to the facts if that resolution turns upon credibility and demeanor determinations. *Peterson*, 117 S.W.3d at 819. If the resolution of the ultimate question turns on an application of law, we review the determination de novo. *Id.*

Because Sanchez's habeas application is premised on claims that he received ineffective assistance of counsel, *Strickland v. Washington* provides the substantive

framework for reviewing the trial court's decision on the merits. To prove a claim of ineffective assistance of counsel, appellant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that his performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To meet the second prong of *Strickland*, the appellant must show that his trial counsel's deficient performance damaged his defense to such a degree that there is a reasonable probability the result of the trial would have been different. *See* 466 U.S. at 693. We evaluate this factor while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813.

Appellant has the burden to establish both of these prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

An applicant seeking habeas corpus relief based on an involuntary guilty plea must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Morrow*, 952 S.W.2d 530, 535 (Tex. Crim. App. 1997)). The applicant bears the burden to establish that a reasonable probability exists that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). In other words, the applicant must show that a decision to reject the plea bargain would have been rational under the circumstances. *Id.* (citing *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485).

## II. Analysis

### A. Sexual assault charge

Sanchez contends that his trial counsel rendered ineffective assistance by not advising him of the correct elements of the offense of sexual assault of a child, challenging the State's proof of the offense, or advising him of the immigration consequences of his plea, which caused Sanchez to involuntarily enter a guilty

7

plea. He further contends that his trial counsel failed to obtain the services of a court-certified interpreter, who would have explained the plea papers, admonishments, and waivers to Sanchez in Spanish, and that Sanchez could not understand the proceedings and the papers he signed. Sanchez characterizes the Spanish fluency of his trial counsel as "mediocre at best," and claims that trial counsel did not adequately explain what was taking place during the proceeding.

The affidavits provided to the trial court by Sanchez's counsel directly refute his allegations of deficiencies in their representation. Counsel attested that they advised Sanchez in detail about the charge against him and recommended that he plead innocent and proceed to trial on the charges. In addition, they testified that they specifically explained the immigration consequences of the plea agreement proposed by the State.

The evidence likewise is disputed concerning Sanchez's ability to understand the proceedings and his need for an interpreter. Pursuant to Article 38.30(a) of the Texas Code of Criminal Procedure, an interpreter "must be sworn to interpret for the person charged" on the motion of a party in a criminal proceeding or on the court's own motion. TEX. CODE CRIM. PROC. ANN. art. 38.30(a) (West Supp. 2012). If the court does not comply with article 38.30, we review the error for harm. *See Leal v. State*, 782 S.W.2d 844, 850 (Tex. Crim. App. 1989). To show harm, the applicant must identify a specific example of

8

actual injury. *Frescas v. State*, 636 S.W.2d 516, 518 (Tex. App.—El Paso 1982, no pet.); *see also Linton v. State*, 275 S.W.3d 493, 509 (Tex. Crim. App. 2009) (observing that 'the record reflects that appellant understood the proceedings well enough to assist in her own defense; [and] moreover, whatever communication difficulties might have existed between appellant and her trial counsel were not apparent in the record"; consequently, record did not support court of appeals' conclusion that interpreters used were constitutionally insufficient to ensure appellant's due process rights).

In his affidavit, lead trial counsel testified that he was born in Spain, is fluent in Spanish, and has spoken Spanish his entire life. The court found this testimony credible. No evidence in the record shows that Sanchez moved for a certified interpreter, nor is there any proof that Sanchez objected to his counsel's alleged inability to communicate with him in a way he could understand. The court admonished Sanchez: "[t]hat if you are not a citizen of the United States of America, your plea of guilty or nolo contendere for the offense charged may result in your deportation, the exclusion from admission to this country, or the denial of naturalization under federal law." After hearing the court's admonishments and consulting with his attorney, Sanchez initialed the blocks corresponding to the statements "[t]hat I am mentally competent and I understand the charge or charges alleged against me," and "[t]hat I understand all of the admonitions given to me by

9

the Court and the consequences of my plea." Following the defendant's stipulations and confession appears a statement prepared by Sanchez's attorney, which declares:

> I represent the Defendant in this case. I have consulted with him and advised him of his rights. I believe that the Defendant is mentally competent to stand trial, that he fully understands the Court's admonitions, and that he is fully aware of the consequences of his plea and this document. . . . After fully discussing it with the Defendant, I believe this document was knowingly and voluntarily executed by the Defendant.

The trial court found Sanchez's claims that he could not understand the proceedings to be incredible. Contrary to the contentions in Sanchez's habeas application, some evidence in the record shows that Sanchez understood the charge against him and the consequences of his plea. Further, because Sanchez has not identified any specific harm resulting from the lack of a court-certified interpreter, Sanchez has not shown the trial court abused its discretion by denying habeas relief on this basis.

Sanchez's claim that counsel failed to explain the immigration consequences of his pleas to the sexual assault charge also fails as a matter of law because it predates the *Padilla* decision, in which the Supreme Court held that the sixth amendment requires an attorney for a criminal defendant to provide advice about the risk of deportation arising from a guilty plea. 559 U.S. at 1486, 130 S. Ct. at 1486. In *Chaidez v. United States*, the Supreme Court held that *Padilla* does not

10

apply retroactively. 133 S. Ct. 1103, 1110–11 (2013); *Ex parte De los Reyes*, 392 S.W.3d 675, 679 (Tex. Crim. App. 2013); *Ibarra v. State*, ___ S.W.3d ___, ___, 2013 WL 1163967, at \*2 (Tex. App.—Houston [1st Dist. 2013, no pet.). As a result, Sanchez cannot benefit from *Padilla*'s holding on collateral review.

Before *Padilla*, Texas courts considered admonitions about the deportation consequences of a guilty plea as collateral matters that could not support a claim of ineffective assistance of counsel. *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). Further, as an undocumented alien without authorization to remain in the United States, Sanchez could have been removed from the United States at any time, even if he had not pleaded guilty to the sex offender charges. We hold that Sanchez has not borne his burden to demonstrate he received ineffective legal representation in connection with the sexual assault charge against him.

### B. Failure to comply with sex offender registration requirement

According to Sanchez, his trial counsel in the sex offender registration case rendered ineffective assistance because, as a Spanish speaker, Sanchez was unable to understand his counsel's explanation of the consequences of his plea, and no interpreter assisted him at the plea hearing. An alien like Sanchez, who has previously been removed or deported and reenters the United States, can be removed again under the earlier removal order; he is not eligible for discretionary

review in almost all circumstances. *See* 8 U.S.C. § 1231(a)(5)[3]; *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34–35 (2006); *see also Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) ("The scope of a reinstatement inquiry under [section 1231(a)(5)] is much narrower, and can be performed like any other ministerial enforcement action. The only question is whether the alien has illegally reentered after having left the country while subject to a removal order."). Because Sanchez was and continues to be subject to removal—regardless of his plea to the registration requirement charge—he cannot, as a matter of law, show that he was prejudiced by his counsel's alleged failure to ensure that Sanchez understood that probable consequence.

## Conclusion

We affirm the trial court's order denying habeas relief.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do Not Publish. TEX. R. APP. P. 47.2(b).