# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00350-CR

### Ex parte William West Riley

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-13-203238, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

William West Riley appeals from the habeas court's order denying his application for writ of habeas corpus pursuant to Texas Code of Criminal Procedure article 11.072. *See* Tex. Code Crim. Proc. art. 11.072 (establishing procedures for application for writ of habeas corpus in misdemeanor case in which applicant seeks relief from order placing applicant under community supervision). Riley was charged with the misdemeanor offense of assault causing bodily injury—family violence. Riley entered into a plea agreement pursuant to which he agreed to plead no contest to the charge in exchange for the State's recommendation that his adjudication of guilt be deferred and that he be placed on one year deferred adjudication community supervision, that the court make a finding of family violence, and that the court order him to pay a fine, court costs, receive counseling and complete 24 hours of education. In accordance with that agreement, Riley pleaded no contest to the charged offense of assault family violence, and the county court deferred his adjudication of guilt and placed him on community supervision for one year. The court also made an affirmative finding of family violence.

Less than two months later, the State filed a motion to proceed with adjudication of guilt alleging that Riley failed to pay certain fees and failed to complete a court-ordered family violence assessment. Seven months later, the State filed an amended motion alleging that Riley failed to complete court-ordered counseling and that he had committed a subsequent criminal offense.[1] In October 2014, the court signed an order unsatisfactorily releasing Riley from deferred adjudication community supervision stating "despite the unsatisfactory nature of the Defendant's response to Deferred Adjudication Community Supervision, the period of Community Supervision has expired."

Eighteen months after his unsatisfactory release, Riley filed an application for writ of habeas corpus asserting that his plea was entered as a result of ineffective assistance of counsel and was therefore involuntary. After a hearing, the court denied the writ application. In two issues on appeal, Riley contends that his plea was involuntary because his counsel (1) gave him erroneous advice about the range of punishment he was facing and (2) did not advise him regarding the "firearms and military consequences" he was facing. Riley argues that the trial court abused its discretion by finding that counsel's performance was not so deficient as to constitute ineffective assistance. We will affirm the county court's order denying Riley's writ application.

## BACKGROUND

In February 2014, Officer K. Garvey responded to a 911 call reporting a possible physical disturbance at the home Riley shared with his wife, J.G., and their two-month-old child.

_____

[1] According to Riley's application for writ of habeas corpus, the prosecuting attorney declined to prosecute the alleged subsequent offense.

2

According to Officer Garvey's affidavit of probable cause for Riley's arrest, the 911 call was made by J.G.'s mother, who stated that she had called 911 after J.G. had called her and asked her to call the police. J.G.'s mother stated that while she was driving to Riley and J.G.'s house she received text messages from J.G., one of which stated that Riley had squeezed her under her ribs making it difficult for her to breathe. In the affidavit, Officer Garvey averred that Riley stated that he and J.G. had gotten into a heated argument. Riley first denied that the argument had become physical, but then stated that during the argument he grabbed J.G. in a "bear hug type hold" with both arms wrapped completely around her. Riley stated that he could tell that this caused J.G. to have difficulty breathing. While Riley was holding J.G., she wrapped both her hands around his neck. Riley stated that he broke her grasp with his forearms and tucked his chin into his chest, which caused his head to strike J.G. in the middle of her chest. Riley acknowledged that J.G. appeared to be in pain after his head hit her chest, and that she continued to have difficulty breathing. Riley stated that he had held J.G. in a "bear hug" to keep her from leaving or moving. J.G. provided the officer a similar account of the events and stated that she had called her mother and asked her to call 911 because she was afraid of what Riley would do if he knew that she had called 911. According to the probable cause affidavit, J.G. complained of pain from her stomach and lower back area and had to be transported to the hospital for her difficulty breathing. Riley was arrested for assault family violence, a Class A misdemeanor. *See* Tex. Penal Code § 22.01(a)(1), (b).

Riley entered into a negotiated plea agreement pursuant to which he received one-year deferred adjudication community supervision, along with a $200 fine, court-ordered counseling, and a family violence finding. As set out above, he was ultimately ordered unsatisfactorily released from

3

deferred adjudication community supervision. Thereafter, Riley filed an application for writ of habeas corpus. *See* Tex. Code Crim. Proc. art. 11.072. In his application, Riley argued that he did not voluntarily enter his plea because he was given "factually inaccurate" advice that (1) he could be charged with a felony if he rejected the plea agreement, (2) the records related to his arrest could later be "nondisclosed," and (3) deferred adjudication would not interfere with his eligibility to join the Marines.[2]

During the habeas hearing, Riley testified that his attorney, Don Campbell, told him that if he "didn't take the plea [he] could be charged with a felony." Regarding the effect accepting the plea would have on joining the Marines, Riley testified that his attorney told him "it would not be a problem at all once I completed the probation that it would—since it would be off my record everything would be fine, I would be able to do the same amount of stuff I could do before." Riley's mother also testified at the habeas hearing. She stated that she had first contacted Campbell to assist in the defense of an unrelated charge brought against Riley in Hays County. When Riley was subsequently arrested for assault family violence in Travis County, his mother again contacted Campbell and the two communicated about the case.[3] Riley's mother testified that she "was told that if we went to trial he could be tried as a—it could be tried as a felony." She also testified that she told Campbell that Riley "wanted to join the military," and that she "was never informed that by taking deferred adjudication it would impact his ability to join."

---

[2] On appeal, Riley has abandoned his claim that his attorney gave him inaccurate advice regarding non-disclosure of his arrest records.

[3] Although Riley's mother testified that he was seventeen years old and was a "minor in [her] eyes," the record reflects that the assault for which Riley was arrested occurred approximately one week after his eighteenth birthday.

4

Campbell testified that he defended Riley against the previous Hays County charge as well as the Travis County charge for assault family violence. With regard to the assault family violence charge, Campbell testified that he obtained an affidavit of non-prosecution from J.G. and presented it to the prosecuting attorney "in the hopes that [he] might use that in negotiating on behalf of Mr. Riley." Campbell affirmed that he was told that "the case might be assessed as a felony." Campbell testified that the prosecutor represented to him that "it had offered its best plea, its best settlement arrangement" and that "it was contemplating the question of upgrading the charge to a felony because of the events involving the emergency care and injury to the alleged victim." Campbell stated that he discussed this with Riley and "told him of [sic] what his options were." Campbell also testified that he knew that he "discussed the military with [Riley's] mother on one occasion as a possible option for him" but that he "didn't ever remember discussing that with Mr. Riley."

After considering the arguments of counsel, the court denied Riley's writ application. Thereafter, the court issued the following findings of fact and conclusions of law:

**Findings of Fact**

1. Mr. Campbell obtained a plea offer of 12 months deferred adjudication on the Assault Family Violence case in Travis County. This offer was made subsequent to the original offer of an 18 month straight probation.

2. Mr. Campbell provided the Prosecutor with an Affidavit of Non-Prosecution during negotiations.

3. Mr. Campbell was informed by the Prosecutor that the Prosecutor may consider sending the case for enhancement based on suffocation/strangulation.

5

4.     Mr. Campbell informed his client of all of the offers and informed his client the prosecution may consider sending the case to be reviewed for felony enhancement.

5.     Mr. Campbell did not make any representation that the Defendant's record would be eligible for expunction or non-disclosure. Mr. Campbell did make representation to the Defendant and his mother that assuming the Defendant successfully completed the deferred probation, he would not have a conviction for the Assault on his record.

6.     Mr. Campbell never discussed with the Defendant his ability to go into the military based on this case. Mr. Campbell may have had a discussion with the Defendant's mother about the military being a possible option for the Defendant to pursue.

7.     The case was filed in February 2013 and a plea was entered six (6) months later on August 23, 2013, after four (4) prior settings.

8.     Defendant was placed on Deferred Adjudication on August 23, 2013, and was unsuccessfully discharged on October 14, 2014.

**Conclusions of Law**

1.     The Court finds that Don Campbell, the Defendant's original attorney, did not provide the Defendant with ineffective assistance of counsel.

2.     The Court finds that Don Campbell, the Defendant's original attorney, provided effective assistance within the range of reasonable professional assistance.

3.     Defendant was not prejudiced by his attorney's representation.

4.     Specifically, the Court finds that Mr. Campbell did not incorrectly advise the Defendant regarding his ability to own a gun post-plea, about his ability to enter the military post-plea, or any other collateral consequences of the deferred adjudication probation.

5.     Additionally, the Court finds that Mr. Campbell did not provide ineffective assistance of counsel when informing the Defendant of the Prosecutor's position that the case could potentially be sent up for review as a felony strangulation case.

6

6.      The Court finds that Don Campbell, the Defendant's original attorney, was credible in his testimony.

7.      The Court finds that William Riley, the Defendant, was not credible in his testimony.


# DISCUSSION

## *Standard of Review*

Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse of discretion standard. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). The applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). When reviewing the habeas court's denial of an application, we must view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Ex parte Wheeler*, 203 S.W.3d at 324. If the resolution of the ultimate question turns on the application of legal standards, we review those determinations de novo. *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

In habeas proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). For habeas proceedings under article 11.072, "the trial court is the sole trier of fact," and appellate courts afford "almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin

7

2012, pet. ref'd); *see also id.* (stating that there is less potential for disregarding trial court's findings in article 11.072 appeal than in appeal under article 11.07 where court of criminal appeals "is the ultimate fact finder").

### Ineffective Assistance of Counsel

To prevail on an ineffective assistance claim, an applicant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the defendant prejudice—that is, there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). The applicant must prove both prongs of the test by a preponderance of the evidence, and failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

A defendant has the right to effective assistance of counsel in plea proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). A guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *Ex parte Mable*, 443 S.W.3d 129, 131 (Tex. Crim. App. 2014). "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). When a person challenges the validity of a plea contending that his counsel was ineffective, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and,

8

if not, whether there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. *See Ex parte Harrington*, 310 S.W.3d at 458.

### Range of Punishment

In his first issue, Riley asserts that Campbell's performance was deficient because he gave Riley inaccurate and erroneous advice about the range of punishment Riley was facing. Riley argues that he was "told that rejecting a misdemeanor plea would expose him to literally ten times the liability for a felony." According to Riley, the facts as set forth in the probable cause affidavit could not support a felony conviction because those facts did not include that Riley applied pressure to J.G.'s throat or neck or blocked her nose or mouth as would be required to make the offense a third degree felony under Texas Penal Code section 22.01(b)(2). *See* Tex. Penal Code § 22.01(b)(2) (causing bodily injury to another is third degree felony if committed against spouse by impeding normal breathing or circulation of blood by applying pressure to person's throat or neck or by blocking person's nose or mouth). Thus, Riley argues, advice that he faced the range of punishment available for a felony conviction was erroneous and constituted ineffective assistance of counsel.

Riley's argument depends on his assertion that the trial court "concluded that Campbell told Riley his case could become a felony if he did not plead guilty." The trial court did not, however, make such a finding. Rather, the trial court found that Campbell "informed his client the prosecution *may consider sending the case to be reviewed* for felony enhancement." This finding is supported by Campbell's testimony that the prosecutor told him that she was "contemplating the question of upgrading the charge to a felony." Moreover, although Riley testified that Campbell told him that if he "didn't take the plea [he] could be charged with a felony," the trial court expressly

9

found that Riley's testimony was not credible. Deferring, as we must, to the trial court's findings, there is no support for Riley's assertion on appeal that Campbell told him that he would face felony charges if he did not accept the plea. Rather, the trial court found that Campbell accurately conveyed to his client that the prosecution was contemplating whether to upgrade the charged offense to a felony if Riley did not take the plea offered.[4] We overrule Riley's first issue.

### *Effect on Future Military Service*

In his second issue, Riley argues that Campbell's performance was deficient because he did not advise Riley of the "firearms and military consequences [he] was facing." According to Riley, Campbell did not inform him of what he claims to be adverse effects that the plea had on his eligibility to join the Marines. In an affidavit supporting his application for writ of habeas corpus, Riley averred that he asked Campbell whether the case would impact his ability to join the Marines and that Campbell told him "it wouldn't be a problem for me to join the Marines because I wouldn't have a conviction after probation." Riley further averred that he was told by his counsel in the habeas proceeding that "the deferred adjudication on a family violence case would prevent me from possessing a firearm under federal law, which meant I could never join [the Marines]." Riley stated that "[o]bviously I had to stop pursuing my plans to join the Marines" and that he "even tried to join the National Guard with no luck." At the hearing, Riley testified that Campbell advised him that accepting the plea "would not be a problem at all once I completed the probation that it would—since

---

[4] Moreover, we note that while the facts contained in the affidavit of probable cause to arrest Riley may not have included those necessary to support a felony indictment, that affidavit does not encompass the universe of pertinent facts available to the prosecution such as, for example, J.G.'s testimony.

it would be off my record everything would be fine." Campbell, however, testified that he did not recall ever speaking to Riley about the military and that he only recalled Riley's mother mentioning that the military "might be an option" for Riley. The trial court made an express finding that Riley's testimony was not credible, that Campbell's testimony was credible, and that Campbell did not incorrectly advise Riley regarding his ability to enter the military after pleading to deferred adjudication community supervision with a family violence finding.

On appeal Riley does not contend that Campbell gave him inaccurate advice regarding the effect of the plea on his military service eligibility.[5] Rather, Riley argues that adverse effects on eligibility for military service are such a serious consequence that, as with immigration consequences, "counsel is not free to simply remain silent on these issues if they are implicated in a plea agreement." In his brief, Riley argues that "[w]hile a completed deferred adjudication is not technically a conviction under Texas law, the United States Marine Corps has previously interpreted it as one if the person subject to deferred adjudication did not receive a restoration of rights upon completion."[6] Riley continues that "[w]hile it is somewhat unclear whether the current interpretation makes deferred adjudication on a family violence misdemeanor an absolute bar to service, it is instructive that our law requires the court to inform the military as soon as possible when a service member is placed on one." Riley argues that potential adverse effects on his military eligibility are the equivalent of adverse immigration consequences to a noncitizen considering a plea to a deportable offense. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (holding that noncitizen who

---

[5] We observe that the trial court's findings would foreclose that argument.

[6] As support for this statement, Riley cites to the *Policy for Implementation of the Lautenberg Amendment*, MARADMIN 186/03.

pleads guilty to deportable offense may seek post-conviction relief on the ground that plea was involuntary because counsel did not provide effective assistance by informing him of immigration consequences of that plea).

In *Padilla*, the Supreme Court held that counsel's advice regarding deportation "is not categorically removed from the ambit of the Sixth Amendment right to counsel" and that "*Strickland* applies" to a claim that counsel's advice regarding the risk of deportation is deficient. *Id.* at 366; *see also Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) ("In *Padilla v. Kentucky*, the Supreme Court expanded the scope of the Sixth Amendment to hold that it requires an attorney for a non-citizen criminal defendant to provide advice about the risk of deportation arising from a guilty plea."). Relying on *Ex parte Davis*, Riley asserts that, like immigration consequences, military service eligibility is a collateral consequence that implicates Sixth Amendment protections. 748 S.W.2d 555, 557-59 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). Riley's reliance on *Ex parte Davis* is, however, misplaced. In that case, the habeas applicant sought to have two convictions for misdemeanor offenses declared void after he was denied entry into the military service because of those convictions. *Id.* at 557. The court of appeals addressed whether post-conviction habeas corpus relief could be granted on misdemeanor convictions after all the punishment has been served and fines paid. *Id.* at 556. The issue before the court was the jurisdictional question of what constituted "confinement" for purposes of appellate court review of habeas corpus writ proceedings. *Id.* After concluding that the collateral consequences of the convictions—i.e., the denial of entry into the military—were sufficient to constitute "confinement" of the applicant, the court held that it had jurisdiction over the habeas application under Texas Code

12

of Criminal Procedure article 11.09. *Id.* Not before the *Davis* court, however, was whether the failure to advise a defendant of the potential adverse effects of a plea in a misdemeanor case on military service eligibility could be the basis of a claim of ineffective assistance of counsel under *Strickland*.[7]

Riley has not cited a case, nor are we aware of any, in which a court has expanded the scope of the Sixth Amendment to hold that it requires an attorney for a criminal defendant to provide advice about any adverse effects on military service eligibility arising from a guilty plea. We need not, however, decide whether a failure to advise of potential adverse effects on military service eligibility could support a claim of ineffective assistance of counsel because Riley failed to demonstrate prejudice resulting from the alleged error. *See Strickland*, 466 U.S. at 687, 693 (to demonstrate entitlement to post-conviction relief on basis of ineffective assistance of counsel applicant must demonstrate that but for counsel's errors there is reasonable probability of different outcome). "In the context of a collateral challenge to a guilty plea, the focus of the prejudice inquiry is on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process,' and on whether a defendant has shown that 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Ex parte Torres*, 483 S.W.3d at 43 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The applicant must "'convince the court that a

---

[7] The basis for Davis's request for relief was that (1) the trial court failed to admonish him regarding the range of punishment or the maximum punishment in violation of the United States and Texas Constitutions, (2) the convictions constituted double jeopardy, and (3) he did not receive effective assistance of counsel because his counsel did not consult with him and advise him except briefly and incompletely. *Ex parte Davis*, 748 S.W.2d 555, 558-60 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). With regard to the ineffective assistance of counsel claim, the court concluded that the applicant had "shown nothing to indicate that his counsel's performance affected the outcome of the proceedings." *Id.* at 560.

decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* at 48 (quoting *Padilla*, 559 U.S. at 372). Factors to consider are the evidence supporting an applicant's assertions, the likelihood of his success at trial, the risks the applicant would have faced at trial, and the benefits received from the plea bargain. *Id.* Where the totality of the circumstances indicate that a defendant has placed a particular emphasis on certain consequences of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice. *Id.* (citing *United States v. Rodriguez-Vega*, 797 F.3d 781, 789 (9th Cir. 2015)) (referring specifically to immigration consequences).

In view of the totality of the circumstances, and deferring to the habeas court's factual findings, we conclude that Riley has failed to demonstrate that, but for counsel's failure to provide him with any advice regarding potential military service eligibility consequences, he would have rejected the plea bargain and pursued a trial. Riley's claim of prejudice, therefore, fails.

First, neither the application for writ of habeas corpus nor Riley's affidavit indicates that Riley placed any particular emphasis on the effect of accepting the plea on his future military eligibility. Rather, in his affidavit Riley averred that he "was scared of being charged with a felony, and since I thought I could have my record sealed and that it wouldn't keep me out of the Marines, I took the deal." Moreover, the trial court found that Riley's testimony at the habeas proceeding was not credible and that Campbell's was, and Campbell testified that he did not recall discussing the military with Riley at all and his mother only mentioned to him that the "military might be an option" for Riley. The record does not support Riley's assertion that his decision to take the plea was informed by any particular concern about its effect on his future military service. With regard

14

to whether it would have been rational to reject the plea, we consider the likelihood of success at trial, the risk Riley would face had he gone to trial, and the benefit Riley received from the plea bargain. Because Riley admitted to Officer Garvey that he initiated physical contact with his wife and placed her in a "bear hug" that he was aware caused her to have difficulty breathing, the likelihood of a conviction for assault family violence after trial was high. If convicted, Riley faced a potential fine of up to $4,000 and a year in jail. *See* Tex. Penal Code § 12.21 (punishment for Class A misdemeanor). By taking the plea and agreeing to deferred adjudication community supervision, Riley was able to entirely avoid jail time and not be convicted of assault.[8] Thus, considering the totality of the circumstances, which reveal that it would not have been rational for Riley to reject the plea bargain, we conclude that Riley failed to adequately demonstrate that he was prejudiced as a result of Campbell's failure to inform him of the possibility that accepting the plea bargain might somehow adversely affect his future military service eligibility. We overrule Riley's second issue.

## CONCLUSION

Having concluded that the habeas court did not abuse its discretion in denying Riley's application for writ of habeas corpus, we affirm the order denying the writ.

---

[8] Riley's counsel also agreed that, had he been successfully discharged from the deferred adjudication community supervision, there would have been no prohibition on his possessing a firearm.

15

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   October 11, 2016

Do Not Publish