# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00409-CR

---

**Ex parte Tony Ramirez**

---

### FROM THE 460TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-207142-A, THE HONORABLE SELENA ALVARENGA, JUDGE PRESIDING

---

## O P I N I O N

Tony Ramirez filed an application for a writ of habeas corpus, seeking to challenge his conviction for the felony offense of driving while intoxicated. *See* Tex. Code Crim. Proc. art. 11.072; Tex. Penal Code §§ 49.04, .09(b). The trial court denied Ramirez's application. Ramirez appeals the trial court's ruling. We will affirm the trial court's order.

## BACKGROUND

Ramirez was charged with the felony offense of driving while intoxicated with two or more prior convictions, and the indictment alleged that he had prior convictions for driving while intoxicated. *See* Tex. Penal Code §§ 49.04, .09(b). The police report and other accompanying documents state that the police responded to a 911 call by a witness who reported that a person had sideswiped his car but did not stop, and the witness provided a description of the vehicle and its license plate number and followed the vehicle until the police arrived. After observing a vehicle matching the description given by the witness, the police initiated a traffic stop and identified Ramirez as the driver. During their interaction with Ramirez, the police

noticed that he smelled like alcohol, was swaying, had glassy eyes, and mumbled. The officers performed field-sobriety tests, and Ramirez displayed sustained nystagmus and lack of smooth pursuit during the horizontal-gaze-nystagmus test, displayed six indicators of intoxication during the walk-and-turn test, and had difficulty following instructions. The officers also found an open beer can in the center console that had been partially consumed and found another beer can on the floorboard, and Ramirez admitted to drinking two beers. A preliminary breath test showed a blood-alcohol concentration of 0.162.

After being charged, Ramirez agreed to plead guilty to the offense under the terms of a plea-bargain agreement in which the State agreed to recommend that Ramirez be sentenced to ten years' imprisonment but placed on community supervision for ten years. The plea paperwork shows that Ramirez signed the agreement, and the plea agreement specified that he was pleading guilty to the charged offense, set out the punishment range for the third-degree felony, discussed how the punishment recommendation was not binding on the trial court, mentioned that he would be allowed to withdraw his plea if the trial court rejected the agreement, and stated that he would have to get the trial court's permission to appeal any matter that had not already been raised in a motion if the trial court accepts the agreement. The plea paperwork also specifies that Ramirez understood the nature of the charge, the terms of the plea agreement, the admonishments in the agreement, and the consequences of entering a guilty plea. Further, the paperwork relates that Ramirez knew that he had the right to a trial by jury, the right to confront and cross-examine witnesses, and the right to remain silent and states that he was "freely, knowingly, and voluntarily" waiving those and other rights, confessing to committing the charged offense, and entering his guilty plea. Ramirez's appointed trial attorney signed the portion of the agreement stating that he carefully reviewed the agreement with Ramirez and that

2

Ramirez is mentally competent, understands the admonishments, is aware of the consequences of entering his plea, and is "freely, voluntarily, knowingly and intelligently entering his . . . plea of guilty, waiver, stipulation and judicial confession." However, Ramirez's attorney also wrote and signed a statement on the agreement explaining that "Ramirez is entering this plea against the advice of counsel."

During the plea hearing, the trial court explained the charge and set out the applicable punishment range, and Ramirez stated that he understood and did not have any questions. The trial court then discussed the terms of the plea agreement, including Ramirez's being placed on community supervision for ten years, and Ramirez responded that he understood the terms of the agreement. Further, Ramirez explained that he did not have a history of mental health issues. Ramirez then pleaded guilty and related that no one was forcing him to plead guilty or promising him anything in exchange for his plea, that he had gone over the plea agreement with his attorney and signed it, and that he had no questions about the agreement. The trial court determined that Ramirez entered his plea freely and voluntarily.

Following this exchange, Ramirez's trial attorney questioned Ramirez about the plea agreement and the events leading up to it, and Ramirez stated that his attorney spoke with him about the plea paperwork, advised him not to enter a guilty plea, and informed him that his decision to plead guilty could affect his release on parole in another case. Ramirez also agreed that his current trial attorney had replaced his previous attorney, that his trial attorney had not had an opportunity to review the discovery in the case, and that he had not revealed to his trial attorney what his previous attorneys had done in the case. Ramirez then explained that even though his trial attorney recommended not pleading guilty and had not had an opportunity to review the case, he still wanted to move forward with his guilty plea. In response to questions by

3

the trial court, Ramirez acknowledged that his guilty plea could result in his parole being revoked and in his being sent back to prison. At the end of the hearing, the trial court accepted Ramirez's plea, found him guilty of the charged offense, and imposed a sentence consistent with the plea agreement.

A few months later, Ramirez filed an application for a writ of habeas corpus, arguing that his trial attorney provided ineffective assistance of counsel and that his guilty plea was involuntarily given. The State denied Ramirez's allegations. Ramirez's trial attorney submitted an affidavit, explaining that he was appointed to the case approximately three weeks before the plea hearing, that he informed Ramirez that he had not yet seen any discovery in the case other than the contents of the probable-cause affidavit, that Ramirez insisted on accepting the terms of the proposed plea agreement even after being warned that a guilty plea could result in his parole being revoked, and that Ramirez entered his guilty plea against the advice of his trial attorney.

After reviewing Ramirez's application, the State's response, and Ramirez's trial attorney's affidavit, the trial court issued an order denying the requested relief. The trial court also issued, among others, the findings of fact and conclusions of law summarized below:

Findings of Fact

Trial counsel's assertions in his affidavit are credible.

Ramirez entered his guilty plea against the advice of counsel and after being admonished that his trial attorney had recently been appointed to the case and had not had an opportunity to review the evidence, that his parole might be revoked if he pleaded guilty, and that his trial counsel was unaware of what he had discussed with his previous attorneys.

Trial counsel asserts Ramirez's claims are without merit.

4

Conclusions of Law

Ramirez's trial attorney did not advise Ramirez to plead guilty, and he entered his guilty plea against the advice of counsel.

Ramirez failed to show that he received ineffective assistance of counsel as alleged in the habeas application.

Ramirez failed to show that his guilty plea was not entered knowingly, intelligently, and voluntarily.

In a pro se brief, Ramirez appeals the trial court's order denying his requested habeas relief.

## STANDARD OF REVIEW AND GOVERNING LAW

An individual convicted of a felony or misdemeanor may seek habeas "relief from an order or judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. When a person files a writ application, he "must be, or have been, on community supervision, and the application must challenge the legal validity of . . . the conviction for which or order in which community supervision was imposed" or "the conditions of community supervision." *Id.* art. 11.072, § 2(b). When making its determination, the trial court "may order affidavits, depositions, interrogatories, or a hearing, and may rely on [its] personal recollection." *Id.* art. 11.072, § 6(b).

Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard of review. *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367

5

(Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, appellate courts review the record evidence "in the light most favorable to the trial court's ruling." *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

The writ of habeas corpus is an extraordinary remedy. *See Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). To succeed under a post-conviction writ of habeas corpus, the applicant must prove, "by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). For habeas proceedings under article 11.072, "the trial court is the sole finder of fact," and appellate courts afford "almost total deference to a trial court's factual findings when supported by the record, especially when those findings are based upon credibility and demeanor." *Ex parte Ali*, 368 S.W.3d at 830. This deferential review applies even when the findings are based on affidavits rather than live testimony. *Ex parte Thompson*, 153 S.W.3d 416, 418 n.1 (Tex. Crim. App. 2005). "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).

## DISCUSSION

In two issues on appeal, Ramirez contends that the trial court abused its discretion by denying his writ application because his trial attorney provided ineffective assistance and because his guilty plea was involuntarily given.

**Assistance of Counsel**

When arguing that his trial attorney provided ineffective assistance of counsel, Ramirez contends that his trial attorney should have but failed to perform certain acts. First, Ramirez contends that his trial attorney should have moved to suppress evidence related to the traffic stop resulting in his arrest because the witness who made the 911 call did not provide a description of the driver's gender and race, because the arresting officer had no evidence of a vehicle collision, and because the officer had no recordings showing a collision or someone driving while intoxicated. Relatedly, Ramirez contends that his trial attorney should have moved to suppress evidence regarding the witness because there was no evidence that the witness was a credible person, because the witness violated his constitutional rights by following him before the police responded, and because the information provided by the witness did not establish reasonable suspicion to initiate the traffic stop. Finally, Ramirez argues that his trial attorney should have filed a motion for continuance in order to investigate the case and analyze the evidence and asserts that if his attorney had examined the evidence, he would have discovered that there was no legal basis for the traffic stop.

To be entitled to post-conviction relief on the ground of ineffective assistance of counsel, "an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome." *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016). To establish deficient performance, the applicant must show by a preponderance of the evidence that his counsel's performance fell below the standard of prevailing professional norms. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). Appellate review of a trial counsel's performance

7

is "highly deferential," meaning that there is a "strong presumption" that his conduct fell within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see Perez*, 310 S.W.3d at 893. An ineffective-assistance claim must be "firmly founded in the record," and the record "must affirmatively demonstrate" the meritorious nature of the claim. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

The second prong requires the applicant to establish by a preponderance of evidence that there is a reasonable probability that the result of the proceeding would have been different absent his counsel's deficient performance. *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013); *Cox*, 389 S.W.3d at 819. For collateral challenges to a guilty plea, the focus of the prejudice inquiry is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Stated differently, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700; *see Perez*, 310 S.W.3d at 893.

As an initial matter, we note that Ramirez's claims regarding certain acts that his trial attorney allegedly failed to perform do not address how his decision to plead guilty affected the ability of his trial attorney to perform those acts. *Cf. Jackson v. State*, No. A14-90-00484-CR, 1992 WL 198598, at *1 (Tex. App.—Houston [14th Dist.] Aug. 20, 1992, no pet.) (op., not designated for publication) (observing that defendant switched his plea to guilty against advice

8

of counsel and overruling ineffective-assistance claim, noting that "[t]here is no evidence to indicate that if appellant had remained with his initial plea, his counsel would not have performed all of the tasks appellant now complains he failed to perform"). Moreover, as set out above, the trial court found that Ramirez entered his guilty plea against the advice of counsel even though his trial attorney had only recently been appointed and had not had an opportunity to review the evidence and even after being informed that pleading guilty could result in his parole being revoked. *Cf. McMann v. Richardson*, 397 U.S. 759, 769 (1970) (noting that guilty pleas can be entered "before the evidence is in"). Those findings are supported by the record, including the plea paperwork itself and the record from the plea hearing.

Although attorneys may manage trials, "[s]ome decisions are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's behalf, and forgo an appeal." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018); *see also id.* (explaining that Constitution refers to "the 'assistance' of counsel, and an assistant, however expert, is still an assistant" (quoting *Faretta v. California*, 422 U.S. 806, 819-20 (1975))). After Ramirez's trial attorney warned him of the collateral consequences of entering a guilty plea, informed him there had not been enough time to review the evidence, and recommended that he not plead guilty, Ramirez elected to disregard his attorney's advice. At that point, "[t]here was nothing more that he could have done" because "[t]he decision whether to plead guilty . . . belonged to" Ramirez. *See Stano v. Dugger*, 921 F.2d 1125, 1152 (11th Cir. 1991); *see also id.* at 1151 (noting that "[w]hen a defendant preempts his attorney's defense strategy, he thereafter cannot claim ineffective assistance of counsel").

Accordingly, we must conclude that Ramirez failed to meet his burden of showing that his trial attorney's performance fell below an objective standard of reasonableness.

9

*See id.* at 1152; *see also Acosta v. State*, 160 S.W.3d 204, 211 (Tex. App.—Fort Worth 2005, no pet.) (overruling ineffective-assistance claim and noting that defendant "decided to enter an open plea of guilty against the advice of his trial counsel"). For those reasons, we must also conclude that the trial court did not abuse its discretion by failing to grant habeas relief on Ramirez's ineffective-assistance claim and, therefore, overrule his first issue on appeal.

**Voluntariness of Ramirez's Guilty Plea**

In his second issue, Ramirez argues that his guilty plea was involuntary. As support, Ramirez contends that his attorney provided ineffective assistance by failing to prepare a trial defense and failing to document what discovery had been provided before the plea hearing. Relatedly, Ramirez asserts that the evidence failed to establish a valid basis for the traffic stop and his arrest. For these reasons, Ramirez insists that his guilty plea could not have been voluntarily given.

"In the context of a claim that the defendant's plea is involuntary due to ineffective assistance of counsel, the defendant must show (1) that counsel's advice was outside the range of competency demanded of attorneys in criminal cases and (2) that, but for counsel's erroneous advice, the defendant would not have pleaded guilty and would instead have gone to trial." *Arreola v. State*, 207 S.W.3d 387, 391-92 (Tex. App.—Houston [1st Dist.] 2006, no pet.). As discussed previously, Ramirez's attorney recommended that Ramirez not plead guilty because of the potential consequences to his release on parole and because his recently appointed attorney had not yet had an opportunity to review the discovery in the case; however, Ramirez elected to plead guilty anyway. For the reasons discussed in the previous issue, we must conclude that Ramirez has failed to establish that his trial attorney's performance was outside

10

the range of competent representation in criminal cases. *See Stano*, 921 F.2d at 1152; *Acosta*, 160 S.W.3d at 211.

Moreover, as discussed previously, the signed plea paperwork showed that Ramirez was admonished regarding, among other things, the charged offense, the punishment range for the offense, the fact that the State's punishment recommendation was not binding, and the requirement that the trial court give permission to appeal any matter not previously raised by written motion. *See* Tex. Code Crim. Proc. art. 26.13 (setting out certain admonishments that must be given before trial court may accept guilty plea and explaining that admonishments may be given "either orally or in writing"). Moreover, the plea paperwork stated that Ramirez understood the terms of the plea agreement, the consequences of entering his plea, and the admonishments, and the paperwork documented that Ramirez was voluntarily, knowingly, and freely waiving his rights, confessing, and entering his guilty plea. Further, the paperwork reflected that Ramirez's trial attorney went over the agreement with Ramirez and that Ramirez was mentally competent.

Similarly, before accepting Ramirez's plea, the trial court concluded that Ramirez freely and voluntarily entered his plea after verifying that Ramirez understood the nature of the alleged offense and the accompanying punishment range, understood the terms of the plea agreement, did not have a history of mental-health issues, went over the terms of the agreement with his attorney before signing it, and had no questions about the plea agreement. *See Davison v. State*, 405 S.W.3d 682, 686, 687 (Tex. Crim. App. 2013) (explaining that if record "affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied"); *see also Guzman v. State*, No. 03-02-00040-CR, 2002 WL 1988376, at *2 (Tex. App.—Austin Aug. 30, 2002, no pet.) (op., not designated for publication) (concluding that

11

record "affirmatively reflects that appellant . . . entered his guilty plea voluntarily and understandingly").

For these reasons, we cannot conclude that the trial court abused its discretion by failing to grant habeas relief on the ground that Ramirez's guilty plea was involuntary and, therefore, overrule his second issue on appeal.

## CONCLUSION

Having overruled his issues on appeal, we affirm the trial court's order denying Ramirez's application for writ of habeas corpus.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   June 30, 2022

Publish

12